J-A17037-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JEFFREY S. SMITH | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| SUZANNE K. SMITH | |
| Appellee | No. 2674 EDA 2013 |

Appeal from the Order Entered August 13, 2013
In the Court of Common Pleas of Northampton County
Domestic Relations at No: C0048CV2011-10230

BEFORE:  GANTMAN, P.J., PANELLA, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED OCTOBER 09, 2014**

Appellant, Jeffrey S. Smith, appeals *pro se* from the August 13, 2013

order directing him to pay $1,325 per month in child support[1] to Appellee,

---

[1]  Our standard of review is as follows:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground.  We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.  In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

***Krebs v. Krebs***, 944 A.2d 768, 772 (Pa. Super. 2008).

Suzanne K. Smith. Also pending before this Court is Appellant's Application for Relief seeking modification of the trial court's order based on the alleged emancipation of the parties' child. We affirm the trial court's order and deny Appellant's Application for Relief.

In his brief, Appellant argues the trial court made improper use of wage survey in assessing Appellant's imputed income. According to the trial court, the information in the wage survey comes from "the Center for Workforce Information and Analysis (CWIA) Occupational Employment Statistics (OES) survey in cooperation with the U.S. Department of Labor's Bureau of Labor Statistics." Trial Court Opinion, 11/18/13, at 10-11. The trial court assigned Appellant the income of an experienced sales representative based on Appellant's work history. The trial court imputed an income because it found that Appellant willfully failed to obtain adequate employment. The record supports that finding. N.T. Deposition, 5/21/13, at 61-65. We discern no error in the trial court's decision to impute an income to Appellant, nor do we discern any error in the trial court's reliance on the wage survey in support of the amount of imputed income.

In light of our review of the parties' briefs, the applicable law, the certified record, and the trial court opinion, we conclude that the trial court's opinion adequately addresses Appellant's assertions of error. We therefore

affirm the August 13, 2013 order based on the analysis set forth in the attached trial court's well-reasoned opinion.[2]

We deny Appellant's Application for Relief without prejudice. Appellant may seek appropriate relief from the trial court.

Order affirmed. Application for Relief denied. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/9/2014

_____

[2] The trial court found Appellant's Pa.R.A.P. 1925(b) statement to be deficient and the court urges our affirmance on that basis alone. Nonetheless, the trial court parsed Appellant's 1925(b) statement for discernible assertions of error, and it addressed those assertions on the merits. As such, we affirm on the merits rather than quash the appeal for failure to file a proper concise statement of errors.

We also decline Appellee's invitation to quash this appeal based on deficiencies in Appellant's *pro se* brief. Appellee is correct in asserting that Appellant's brief fails to comply with many of the applicable Rules of Appellate Procedure. The trial court's opinion, however, provided an adequate basis upon which we could assess the merits of this appeal.

# IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
## COMMONWEALTH OF PENNSYLVANIA
### DOMESTIC RELATIONS SECTION

| | | |
|---|---|---|
| **SUZANNE K. SMITH,** | ) | **Docket No.: DR-146012** |
| | ) | |
| **Plaintiff** | ) | **Case ID No.: 757113554** |
| | ) | |
| **v.** | ) | **No.: C48CV2011-10230** |
| | ) | |
| **JEFFREY S. SMITH,** | ) | **Superior Ct. No.: 2674 EDA 2013** |
| | ) | |
| **Defendant** | ) | |

RECEIVED 2013 NOV 18 PM 3 55 NORTHAMPTON COUNTY, PA. DOMESTIC RELATIONS SECTION

## PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a) STATEMENT

**AND NOW,** this 18th day of November, 2013, the Court issues the following statement pursuant to Pa.R.A.P. No. 1925(a):

On September 11, 2013, Defendant, Jeffrey Smith (hereinafter "Father") filed and served upon this Court a *pro se* Notice of Appeal to the Superior Court from an Order dated August 13, 2013 and docketed on August 21, 2013, awarding Plaintiff, Suzanne Smith (hereinafter "Mother"), support payments in the amount of $1,325.00 per month, allocated as $1,205.00 basic support of two (2) children, plus $120 towards arrears. On September 12, 2013, this Court issued an Order directing Father to file a "Statement of Errors Complained Of" within twenty-one (21) days. Father filed his "Statement of Errors Complained Of" on October 3, 2013.

For the reasons set forth below, we respectfully suggest that Father's appeal lacks merit and should be dismissed.



XC: The Honorable Paula A. Roscioli
Ruth Vega-Velez
AMS (2)
Stanley J. Margle Esquire
Defendant
Plaintiff                    Mailed 11/19/13 jeb



## BACKGROUND

Mother and Father were married on October 1, 1994. They separated in January 2009. A Petition for Divorce was filed on October 21, 2011. In the course of their marriage, Father and Mother had two (2) children, Tr███ S███ and Ta██ S███ born ████████ 1996 and ████████ 1999, respectively.

Mother filed a Complaint for Support of the two children on October 3, 2012. An Interim Order of support was entered on December 5, 2012 in the amount of $658.00 per month, including $544.00 basic support of the two children. On February 7, 2103, an Interim Order was entered directing Father to pay $323.00 per month for support of the two children, including $269 per month as basic support. Mother filed for a *de novo* hearing. This matter was listed for *de novo* hearing on April 15, 2013. At the time scheduled for the hearing, the parties entered into an Agreement, which was adopted as a temporary Order of Court, providing for payments by Father to Mother in the amount of $681.00 per month, allocated as $269 as basic support and $412.00 per month as a mortgage deviation. This matter was again listed for a *de novo* hearing on June 26, 2013. Briefs were filed by the parties. At the time scheduled for the *de novo* hearing on June 26, counsel for Mother appeared and, with the agreement of counsel for Father, submitted the transcript of the deposition of Mother and Father, taken on

May 21, 2013 in lieu of live testimony. On August 13, 2013, we issued the Order at issue in the instant appeal.

## STANDARD OF REVIEW

It is well established that "[t]he amount of a support Order is within the sound discretion of the trial judge, whose judgment will not be disturbed on appeal absent a clear abuse of discretion." *Calabrese v. Calabrese*, 670 A.2d 1161, 1162 (Pa. Super 1996). "An abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment." *Id.* The Superior Court has made the standard clear, stating as follows:

> [w]hen evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of that discretion or insufficient evidence to sustain the support order. . . In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Laws v. Laws*, 758 A.2d 1226, 1228 (Pa. Super. 2000). An abuse of discretion must be established by clear and convincing evidence. *See,* *Kelly v. Kelly*, 633 a.2d 218 (Pa. Super. 1993).

## DISCUSSION

Father's Statement of Errors Complained Of (hereinafter "Father's Statement") consists of 20 numbered paragraphs spanning 9 pages. Paragraphs 1 and 2 of Father's Statement assert Father's claim that the

Court's wage assessment is "contrary to the evidence" and "arbitrary and capricious", respectively. In Paragraphs 3 and 4 of Father's Statement, he avers that the Court's Decision is in violation of the 14th Amendment and 13th Amendment to the Constitution, respectively. Paragraph 5 of Father's Statement raises the argument that "[t]he Support grids used to determine the amount owed for support are arbitrary and capricious." Paragraph 6 of Father's Statement contains the averment that the "Northampton County Courts have demonstrated a bias towards the female in divorce/custody/support proceedings." Paragraphs 7, 8, and 9 of Father's Statement assert that the Order in question is in violation of Father's 1st Amendment, 7th Amendment and 8th Amendment rights, respectively. In Paragraph 10 of Father's Statement, he avers that our Order and jurisdiction in this matter is in violation of Article III of the United States Constitution. Paragraph 11 of Father's Statement raises a claim of ineffective assistance of counsel. Paragraph 12 contains the assertion that "[n]o party should be financially rewarded or punished in divorce proceedings." Paragraph 13 of Father's Statement states as follows:

> [a] Party should not be entitled to collect support when they initiate a Motion for Exclusive Possession of the Marital Residence. There is recourse for a spouse to obtain possession if a threat of violence is presented. Absent this avenue/solution no party should be entitled to involuntarily impose a support obligation on another.

In Paragraph 14 of Father's Statement, he states that "[s]upport should not be awarded to a Party who encourages a child to cease contact with the other parent or who disparages another parent to the child/children." Paragraph 15 of Father's Statement claims that "[s]upport should be directly tied to custody and not used as a tool for financial gain or punishment." Paragraph 16 of Father's Statement provides as follows:

> [t]he wage assessment is punitive. Punitive and/or excessive fines and awards are greatly discouraged in general under the law. They should not be encouraged in a support action. A support action should not be based upon punishment or reward. A support action should be based upon earnings history and facts.

In Paragraphs 17 and 18 of Father's Statement, he avers that our August 13, 2013 Order violates the 9th and 10th Amendments, respectively. Paragraph 19 states that "[t]he Court has no power or authority expressly provided in the Constitution to separate a family, award custody of children, distribute property or award support. The concept of Parens Patria is unconstitutional." Finally, in paragraph 20, Father avers that "[t]his Court combined with others to subject Appellant [Father] to a jurisdiction foreign to the Constitution of the United States of America, and unacknowledged by this law, giving its Assent to its Acts or pretended Legislation."

## I. Father's Statement violates the requirements of Pa.R.A.P. No. 1925.

Pa.R.A.P. No. 1925(b)(4) provides as follows:

(4) *Requirements; waiver.*

(i) The Statement shall set forth only those rulings or errors that the appellant intends to challenge.

(ii) The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge. The judge shall not require the citation to authorities; however, appellant may choose to include pertinent authorities in the Statement.

(iii) The judge shall not require appellant or appellee to file a brief, memorandum of law, or response as part of or in conjunction with the Statement.

(iv) The Statement should not be redundant or provide lengthy explanations as to any error. Where non-redundant, non-frivolous issues are set forth in an appropriately concise manner, the number of errors raised will not alone be grounds for finding waiver.

(v) Each error identified in the Statement will be deemed to include every subsidiary issue contained therein which was raised in the trial court; this provision does not in any way limit the obligation of a criminal appellant to delineate clearly the scope of claimed constitutional errors on appeal.

(vi) If the appellant in a civil case cannot readily discern the basis for the judge's decision, the appellant shall preface the Statement with an explanation as to why the Statement has identified the errors in only general terms. In such a case, the generality of the Statement will not be grounds for finding waiver.

(vii) Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.

As is noted above, Father's Statement contains 20 paragraphs spanning 9 pages. The Statement is clearly in violation of subsections ii and iv of Rule

1925(b)(4) as the statement is anything by concise, is redundant and provides lengthy explanations as to Father's purported errors by the Court. Paragraph 1 of Father's Statement consists of 15 paragraphs/set off sentences covering more than a full page. Similarly, Paragraph 2 of Father' Statement covers nearly a full page. In fact, each of the first seven paragraphs of Father's Statement contains significant, lengthy explanations and argument regarding the issues purported to be raised.

Father's failure to comply with the Rules of Civil Procedure applicable to the filing of his Statement of Matters Complained of on Appeal render it extraordinarily difficult, if not impossible, for the Court to adequately, accurately and fully address the issues raised. While we suggest the Appeal should be dismissed/quashed on this basis, we will attempt to parse the issues raised and address them in turn.

## II. The Court's wage assessment is not contrary to the evidence.

Paragraph 1 of Father's Statement begins with the averment that the wage assessment is contrary to the evidence. Father then argues that the testimony at his deposition focused on his prior employment as an attorney approximately 15 years ago. Father further avers that there was little to no evidence of Father's sales earnings. Father then incorrectly asserts that our assessment was based upon a salary in the pharmaceutical industry. Father next avers that the assessment is contrary to purported evidence that Father was terminated from his last full time employment and that he is

involuntarily unemployed and working part time in another industry, that the assessment fails to consider Father's alleged efforts to find additional employment, fails to assess an income to Mother, and fails to consider the unstable nature of a contract sales position. Father then avers that the Pennsylvania Occupational Wage Survey was incorrectly utilized, that the Court ignored the economic conditions in the United States, that the use of the salary survey was (or should be) in error, that the use of the survey amounts to profiling. Finally, Father argues that "[i]t is asinine and extremely prejudicial to attribute an earnings assessment based upon a survey of Sales people as the information in a Sales survey does not offer any fact of actual value to any particular case" and that in this case, "the survey provides a salary one-third to one-half higher than any salary earned by [Father] in nearly 40 years of employment".

Our August 13, 2013 Order specifically indicates that "Defendant's income is based on an *assessed* annual gross income of $78,090.00 as an experienced sales representative from the Pennsylvania Occupational Wage Survey." (emphasis added). Pennsylvania Rule of Civil Procedure No. 1910.16-2(d)(4) provides, in relevant part, that "[i]f the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity." It is well established that "both parents have an equal responsibility to support their children, and the

Page 8 of 23

extent of their support obligation is determined by their earning capacity and ability." *Singleton v. Waties*, 616 644, 647 (Pa. Super. 1992). It is further well established that "[a] trial court in determining the parent's ability to pay support must primarily focus on earning capacity rather than actual earnings." *Id., citing, Rock v. Rock,* 560 A.2d 199 (Pa. Super. 1989).

As set forth in the procedural history above, Father and Mother were deposed on May 21, 2013 in lieu of testifying in open Court. Father testified that he retired from the practice of law in the year 2000. N.T., May 21, 2013 at 47:15-17. He testified that from 2000 to 2011 he had worked in sales, albeit in varying fields. *Id.* At 51:12-59:19. Father testified he was a salesperson in the telecommunications field, then for several fabric structures companies, and finally in the pharmaceutical field. The record indicated that in at least 2 of the past 13 years, he made more than $80,000.00. *Id.* at 56:3-11; 59:7-10. Father testified that he was presently employed on a part time basis in the teaching field. *Id.* at 60:13-15. While he stated he was looking for full time employment, he was unable to provide the name of a single entity or business to which he had applied for full time employment. *Id.* at 62:6-9; 64:16-65:7.

Given the record before us, the Court found that Father willfully failed to obtain or maintain appropriate employment. Based upon the testimony, Father had a relatively successful career in sales for more than 10 years. When his last contract was not renewed, rather than pursuing further

employment in that field, he obtained a part time teaching position, in which he remains to date. Father made this decision willfully and of his own accord. Again, while Father testified that he had submitted numerous applications for full time employment, he was unable to provide the name of even one of the employers to which he applied.

Under the circumstances, it was entirely appropriate for the Court to assess Father an income, as opposed to utilizing his actual current income. *See, Singleton, supra.* As to the amount of the assessment, the Court utilized the Pennsylvania Occupational Wage Survey to determine an appropriate assessment of Father's earning capacity. Contrary to Father's assertions, the Court did not base the assessment on the specific field of pharmaceutical sales, nor did the Court impute an income based upon Father's prior career as an attorney.[1] The Court assessed Father an income utilizing the generic occupational title of "Sales Representatives". Pursuant to the PA Occupational Wage Survey of May 2012, the annual wages for an experienced sales representative was $78,090. This was the amount assessed to Father in the August 13, 2013 Order and was appropriate based upon his more than a decade working in sales. While Father challenges the propriety of utilizing the Wage Survey, the information in the Wage Survey was collected through the Center for Workforce Information and Analysis (CWIA) Occupational Employment Statistics (OES) survey in cooperation

---

[1] The Court does note, however, that Father signed his Statement as "Jeffery S. Smith, Esquire". The Court also notes that the record indicates that Father's license to practice law was suspended in 2005 by the Disciplinary Board and Father has never taken the necessary steps to have his license to practice law reinstated.

with the U.S. Department of Labor's Bureau of Labor Statistics (BLS). As set forth in the Technical Notes of the PA Occupational Wage Survey, "[t]he OES survey, conducted in cooperation with the US Department of Labor's BLS, is a semi-annual mail survey of approximately 8,000 randomly selected Pennsylvania employers designed to collect second quarter and fourth quarter employment and wage data for up to approximately 800 occupations." Guide to Pennsylvania Occupational Wages at p. 7. "Each semi-annual survey represents only one-sixth of the sample for the full three-year OES sample plan. The survey is designed to produce estimates based on three full years of data. Utilizing three years of data significantly reduces sampling error, but requires the adjustment of the earlier two years of wage data to the current time period using the national Employment Cost Index (ECI)." *Id.* The Wage Survey provided the Court with accurate and necessary information to determine Father's earning capacity. Given his extensive work history in sales, it was appropriate to assess him an earning capacity commensurate with an experienced sales representative.

Based upon the above, Paragraph 1 of Father's Statement is without merit.

### III. The Court's wage assessment is not arbitrary and capricious.

In Paragraph 2 of his Statement, Father alleges that the wage assessment is arbitrary and capricious. Father discusses what he believes to be Mother's intent to have Father assessed at a high salary as a practicing

attorney. Father avers that the Court was biased against him and ignored evidence as to actual historical earnings of Father. He then alleges that the Court should have used the Wage Survey to determine Mother's income.

Contrary to Father's argument, Mother's intent is entirely irrelevant to the instant matter. Father is appealing our August 13, 2013 Order. As specifically set forth in the Order, Father is *not* assessed as an attorney. The Order specifically indicates that "[Father's] income is based on an assessed annual gross income of $78,090 as an *experienced sales representative* from the Pennsylvania Occupational Wage Survey." (emphasis added). The Court assessed Father using the occupational title "Sales Representative", SOC Code 41-4012. Again, the experienced annual wage for a "Sales Representative" is the $78,090 with which Father was assessed. If the Court had assessed Father as an experienced "Lawyer", SOC Code 23-1011, he would have been assessed an income of $165,800.00.

As to a judicial decision, Blacks Law Dictionary defines "arbitrary" as "founded on prejudice or preference rather than on reason or fact." BLACK'S LAW DICTIONARY (9th ed. 2009). "Capricious" is defined as "contrary to the evidence or established rules of law." *Id.* As discussed herein, the record clearly reflects that Father was employed as a sales representative for various companies for more than a decade. Father was a sales representative in the telecommunications field, then for several companies selling fabric structures, then in the field of pharmaceuticals. Our August

13, 2013 Order was based on the facts of record and sound reason. The evidence and rules of law clearly provided for the assessment of Father's income as an experienced sales representative, and the Wage Survey provided the income utilized in our Order.

Father is correct that Mother's income was not assessed or based upon the Wage Survey. Mother's income was based upon her actual, full time salary and records submitted in support thereof. There was nothing in the record to indicate that Mother had willingly or voluntarily reduced her income or that her earning capacity was anything other than her current employment/salary, therefore, utilizing her actual income was appropriate. See, Pa.R.C.P. No. 1910-16-2.

## IV. The August 13, 2013 Order does not violate Father's 14th Amendment Rights.

The Fourteenth Amendment to the United States Constitution provides, in relevant part, as follows:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Father argues that he has been denied equal protection under the law and that the Court demonstrated a clear and convincing bias for the female Plaintiff. Father then avers that "[u]pon information and belief the Court in

Northampton County has a clear and convincing bias against husbands in divorce/custody and support matters" and then makes the same averment regarding bias against attorneys. These averments are entirely unsupported and solely the opinion of Father. There is no factual or statistical evidence to support this conclusion.

Based upon the record before us, the child support calculations were correct. Father's monthly child support obligation was determined pursuant to Pa.R.C.P. No. Rule 1910.16-3 and Pa.R.C.P. No. 1910.16-4. Father's income was determined, as discussed in detail above, based upon an assessment of $78,090. Father's monthly income, based on that assessment, totaled $4,657.26 per month. Mother's income was determined to be $3,881.35 based upon pay stubs submitted to the Conference Officer. The combined monthly net income/benefit amount received by the parties was $8,538.61. The total monthly support amount was determined to be $1,838.00. The income ratio allocated to Father was 54.54%. Father's guideline obligation was set at $1,002.45, while Mother's support obligation was $835.55. Father received an insurance premium reduction of $132.88. The total monthly child support due from Father was determined to be $869.57. Father's support obligation also took into account the mortgage credit adjustment of $335.00 per month.

Father was not deprived of his due process rights in the instant matter. The record reflects that Father had the opportunity to attend the

various conferences with the Domestic Relations Conference Officer. Father had the opportunity to file for a *de novo* hearing if he chose to do so. Father was represented by counsel throughout the process, including at the *de novo* hearing after Mother filed for said hearing, and was assisted by counsel in preparing and presenting his case.

Finally, contrary to Father's assertions, none of the Court's actions in the instant matter amount to "endentured servitude". As set forth above, Pa.R.C.P. No. 1910-16.2(d)(4) provides that the Court "may impute to that party an income equal to the party's earning capacity." Father is not being compelled against his will to perform any particular services. The Court merely concluded that Father was capable of earning the amount set forth in the Order, regardless of whether he was, in fact, earning that amount. Father's contention that his 14th Amendment rights were violated is without merit.

### V. The August 13, 2013 Order does not violate Father's 13th Amendment Rights.

Section 1 of the 13th Amendment to the United States Constitution provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." Contrary to his assertions, Father is not being subjected to any form of servitude. Again, as set forth above, Father was assessed an income pursuant to Pa.R.C.P. No. 1910-16.2. Father is not being forced to perform

any particular work or service. The Court merely determined that he had the *capacity* to earn the amount set forth in the Order. Father is not being compelled to seek and find employment beyond anything that he has ever held. In fact, the record clearly reflected that he made more as a sales representative in at least 2 of the past 13 years than the amount he was assessed. Paragraph 4 of Father's Statement is without merit.

## VI. Paragraphs 5 and 6 of Father's Statement are without merit.

In Paragraph 5 of his Statement, Father avers that the support grids used to determine the amount owed for support are arbitrary and capricious. In Paragraph 6, Father avers that the Northampton County Courts have demonstrated a bias towards the female in divorce/custody/support proceedings. Taking these paragraphs in reverse order, the averment in paragraph 6 is not an appealable issue in the instant matter. Father argues that he has been scolded, instructed, corrected, threatened and ruled against "with extreme prejudice" in the divorce proceedings. Other than his averment that the support Order in question in this appeal is "oppressive", none of the other averments are relevant to this appeal. As to Father's opinion that the Order is oppressive, the calculations were prepared, as set forth above, in full compliance with the applicable rules of civil procedure.

As to Paragraph 5 of Father's Statement, Pa.R.C.P. No. 1910-16.1(a) provides that "the support guidelines set forth the amount of support which a spouse or parent should pay on the basis of both parties' net monthly

incomes as defined in Rule 1910.16-2 and the number of persons being supported." Rule 1910.16-2(d) provides, in relevant part, that "[i]f it has been determined that there is an obligation to pay support, there shall be a rebuttable presumption that the amount of the award determined from the guidelines is the correct amount of support to be awarded."

It is clear that Father is obligated to pay support for his two children. The record is devoid of any evidence to rebut the presumption that the amount in the guideline is correct.

## VII. The August 13, 2013 Order does not violate Father's 1st Amendment rights.

Father avers that the Order violates his First Amendment rights. The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." At no point prior to the filing of Father's Statement has Father raised the issue of religious freedom. It is well established that "[i]n a free exercise of religion claim, the threshold requirements for religious beliefs to be accorded first amendment protection are that the beliefs avowed be 1) sincerely held and 2) religious in nature, in the claimant's scheme of things." *Megget v. Department of Corrections*, 856 A.2d 277, 279-280 (Pa. Cmwlth. 2004), *citing*, *Africa v. Pennsylvania*, 662 F.2d 1025 (3d Cir.1981), *cert. denied*, 456 U.S. 908, 102

S.Ct. 1756, 72 L.Ed.2d 165 (1982). "When both of these requirements are met, the court must go on to decide the question of whether a legitimate and reasonably exercised state interest outweighs the proffered first amendment claim." *Id.* The record is devoid of any evidence to suggest that Father's religion had anything to do with his decision to go into teaching or to refuse to obtain full time employment. Furthermore, having a part time job is not a belief that is religious in nature. Therefore, Paragraph 7 of Father's Statement is without merit.

## VIII. The Court's Order is not in violation of the 7th and 8th Amendments.

Father next avers that the August 13, 2013 Order is in violation of the 7th and 8th Amendments to the Constitution. The 7th Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." The 8th Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

The domestic relations *de novo* hearing is not a suit at common law and there is not "value in controversy", therefore, Father did not have a right to a jury trial in the instant matter. Additionally, Pa.R.C.P. No. 1910.11(i) provides that if, after an Interim Order is issued following a conference with the conference officer, "there shall be a hearing de novo

before *the court.* The domestic relations section shall schedule the hearing and give notice to the parties. *The court* shall hear the case and enter a final order . . . ." (emphasis added). The Rules of Civil Procedure specifically provide for the *de novo* hearing to be held without a jury. Father's 7th Amendment challenge is without merit.

As to the 8th Amendment challenge the Order in question is not an order of bail, a fine, or a punishment, therefore Paragraph 9 of Father's Statement is without merit.

### IX. The Order does not violate Article III of the United States Constitution.

Father asserts in paragraph 10 of his Statement that the Order and jurisdiction in this matter violated Article III of the United States Constitution. Article III establishes the federal judiciary system. The 10th Amendment to the United States Constitution provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." The Pennsylvania Constitution, Art. 5, Sec. 1 provides for the establishment of the Pennsylvania unified judicial system. Article 5, Sec. 5 provides for establishment of the Court of Common Pleas with "unlimited original jurisdiction in all cases except as may otherwise be provided by law." As set forth above, the Pennsylvania Rules of Civil Procedure provide that the Court of Common Pleas will hear de novo, appeals from the determination of the Domestic Relations Conference Officers. It is clear that this Court had

jurisdiction over the instant matter and Father's support obligations. We appropriately exercised that jurisdiction as provided in the Rules of Civil Procedure. Therefore, Paragraph 10 of Father's Statement is without merit.

## X. Paragraphs 11, 12 13, 14 and 15 are not appropriate for review on this appeal.

Paragraph 11 of Father's Statement purports to raise a claim of ineffective assistance of counsel. The test applied currently to claims of ineffective assistance of counsel in criminal cases applies with equal force to civil cases only where the right to effective assistance of counsel has been deemed a requirement of due process. See, In re: Adoption of T.M.F., 573 A.2d 1035 (Pa. Super. 1990). There is no requirement or right to counsel in a support hearing, therefore, the Court will not and should not review Father's ineffective assistance claim. If he desires to do so, Father can pursue a claim of malpractice against his attorney in civil court.

Paragraphs 12, 13, 14 and 15 contain Father's opinions as to the various aspects of the judicial system. As to Paragraph 12 averring that "[n]o party should be financially rewarded or punished in a divorce proceeding", the Instant Order is a child support order and is not directly related to the divorce action. Paragraph 12 of Father's Statement is without merit. Paragraph 13 is Father's averment that a party should not be able to collect support when they initiate a Motion for Exclusive Possession of the marital residence. Unfortunately for Father, there is no provision in the law restricting support to cases where a motion for exclusive possession has not

been filed, therefore Paragraph 13 is also without merit. In Paragraph 14, Father avers that "[s]upport should not be awarded to a Party who encourages a child to cease contact with the other parent or who disparages another parent to the child/children." The record in the instant matter contains no evidence of any encouragement of the children to cease contact with the other parent or any disparagement, therefore this averment is without merit. In Paragraph 15, Father avers that "[s]upport should be directly tied to custody and not used as a tool for financial gain or punishment". Our August 12, 2013 Order is based upon the Support Guidelines established by Pennsylvania Rules of Civil Procedure 1910-16.4, rendering Paragraph 15 of Father's Statement without merit.

## XI. The August 13, 2013 Order does not violate the 9th Amendment or 10th Amendment.

In Paragraph 17 of his Statement, Father claims that the August 13, 2013 Order violates the 9th Amendment to the United States Constitution, which provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." In Paragraph 18 of his Statement, Father avers that the Assessment violates the 10th Amendment, which provides "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." As discussed above, the Pennsylvania Constitution, Art. 5, Sec. 1 provides for the establishment of the Pennsylvania unified judicial system. Article 5, Sec. 5 provides for

establishment of the Court of Common Pleas with "unlimited original jurisdiction in all cases except as may otherwise be provided by law." The Pennsylvania Rules of Civil Procedure then provide for the Court of Common Pleas to hear, de novo, an appeal from the determination of the Domestic Relations Conference Officer. This Court had jurisdiction over Father's support case and exercised that jurisdiction as provided in the Rules of Civil Procedure. Therefore, Paragraphs 17, 18 and 20 of Father's Statement are without merit.

## XII. The Court has the power and authority to award support.

In Paragraph 19 of his Statement, Father argues that "[t]he Court has no power or authority expressly provided in the Constitution to separate a family, award custody of children, distribute property or award support. The concept of Parens Patria is unconstitutional." As to the final averment, the Order at issue in the instant matter has no connection to the concept of Parens Patria. As to the remaining averments, only Father's averment as to the award of support is relevant to the Order at issue in the instant matter. As set forth above, the Court has jurisdiction over the instant matter. The United States Constitution, the Pennsylvania Constitution and the Rules of Civil Procedure, specifically, Pa.R.C.P. Nos. 1910.1, et seq., set forth the rules, procedures and guidelines for support determinations. The Court properly heard and determined the Petition for Support filed by Mother and jurisdiction in this Court was proper.

## CONCLUSION

Based upon the above, it is clear that the issues raised in Father's Statement are without merit. We respectfully suggest that Father's appeal be dismissed.

**BY THE COURT**

**PAULA A. ROSCIOLI, J.**